**Emmit E. FISHER, Petitioner,**

v.

**CARROUSEL MOTOR HOTEL, INC., et al., Respondents.**

**No. B–342.**

Supreme Court of Texas.

Dec. 27, 1967.

Ben G. Levy, Houston, for petitioner.

Vinson, Elkins, Weems & Searls, Raybourne Thompson, Jr. and B. Jeff Crane, Jr., Houston, for respondents.

GREENHILL, Justice.

This is a suit for actual and exemplary damages growing out of an alleged assault and battery. The plaintiff Fisher was a mathematician with the Data Processing Division of the Manned Spacecraft Center, an agency of the National Aeronautics and Space Agency, commonly called NASA, near Houston. The defendants were the Carrousel Motor Hotel, Inc., located in Houston, the Brass Ring Club, which is located in the Carrousel, and Robert W. Flynn, who as an employee of the Carrousel was the manager of the Brass Ring Club. Flynn died before the trial, and the suit proceeded as to the Carrousel and the Brass Ring. Trial was to a jury which found for the plaintiff Fisher. The trial court rendered judgment for the defendants notwithstanding the verdict. The Court of Civil Appeals affirmed. 414 S.W.2d 774. The questions before this Court are whether there was evidence that an actionable battery was committed, and, if so, whether the two corporate defendants must respond in exemplary as well as actual damages for the malicious conduct of Flynn.

The plaintiff Fisher had been invited by Ampex Corporation and Defense Electronics to a one day's meeting regarding telemetry equipment at the Carrousel. The invitation included a luncheon. The guests were asked to reply by telephone whether they could attend the luncheon, and Fisher called in his acceptance. After the morning session, the group of 25 or 30 guests adjourned to the Brass Ring Club for lunch. The luncheon was buffet style, and Fisher stood in line with others and just ahead of a graduate student of Rice University who testified at the trial. As Fisher was about to be served, he was approached by Flynn, who snatched the plate from Fisher's hand and shouted that he, a Negro, could not be

served in the club. Fisher testified that he was not actually touched, and did not testify that he suffered fear or apprehension of physical injury; but he did testify that he was highly embarrassed and hurt by Flynn's conduct in the presence of his associates.

The jury found that Flynn "forceably dispossessed plaintiff of his dinner plate" and "shouted in a loud and offensive manner" that Fisher could not be served there, thus subjecting Fisher to humiliation and indignity. It was stipulated that Flynn was an employee of the Carrousel Hotel and, as such, managed the Brass Ring Club. The jury also found that Flynn acted maliciously and awarded Fisher $400 actual damages for his humiliation and indignity and $500 exemplary damages for Flynn's malicious conduct.

 The Court of Civil Appeals held that there was no assault because there was no physical contact and no evidence of fear or apprehension of physical contact. However, it has long been settled that there can be a battery without an assault, and that actual physical·contact is not necessary to constitute a battery, so long as there is contact with clothing or an object closely identified with the body. 1 Harper & James, The Law of Torts 216 (1956); Restatement of Torts 2d, §§ 18 and 19. In Prosser, Law of Torts 32 (3d Ed. 1964), it is said:

"The interest in freedom from intentional and unpermitted contacts with the plaintiff's person is protected by an action for the tort commonly called battery. The protection extends to any part of the body, or to anything which is attached to it and practically identified with it. Thus contact with the plaintiff's clothing, or with a cane, a paper, or any other object held in his hand will be sufficient; * * * The plaintiff's interest in the integrity of his person includes all those things which are in contact or connected with it."

 Under the facts of this case, we have no difficulty in holding that the intentional grabbing of plaintiff's plate constituted a battery. The intentional snatching of an object from one's hand is as clearly an offensive invasion of his person as would be an actual contact with the body. "To constitute an assault and battery, it is not necessary to touch the plaintiff's body or even his clothing; knocking or snatching anything from plaintiff's hand or touching anything connected with his person, when done in an offensive manner, is sufficient." Morgan v. Loyacomo, 190 Miss. 656, 1 So.2d 510 (1941).

Such holding is not unique to the jurisprudence of this State. In S. H. Kress & Co. v. Brashier, 50 S.W.2d 922 (Tex.Civ. App.1932, no writ), the defendant was held to have committed "an assault or trespass upon the person" by snatching a book from the plaintiff's hand. The jury findings in that case were that the defendant "dispossessed plaintiff of the book" and caused her to suffer "humiliation and indignity."

The rationale for holding an offensive contact with such an object to be a battery is explained in 1 Restatement of Torts 2d § 18 (Comment p. 31) as follows:

"Since the essence of the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body, it is not necessary that the plaintiff's actual body be disturbed. Unpermitted and intentional contacts with anything so connected with the body as to be customarily regarded as part of the other's person and therefore as partaking of its inviolability is actionable as an offensive contact with his person. There are some things such as clothing or a cane or, indeed, anything directly grasped by the hand which are so intimately connected with one's body as to be universally regarded as part of the person."

We hold, therefore, that the forceful dispossession of plaintiff Fisher's plate in an offensive manner was sufficient to constitute a battery, and the trial court erred in granting judgment notwithstanding the verdict on the issue of actual damages.

■ In Harned v. E-Z Finance Co., 151 Tex. 641, 254 S.W.2d 81 (1953), this Court refused to adopt the "new tort" of intentional interference with peace of mind which permits recovery for mental suffering in the absence of resulting physical injury or an assault and battery. This cause of action has long been advocated by respectable writers and legal scholars. See, for example, Prosser, Insult and Outrage, 44 Cal.L.Rev. 40 (1956); Wade, Tort Liability for Abusive and Insulting Language, 4 Vand.L.Rev. 63 (1950); Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich.L.Rev. 874 (1939); 1 Restatement of Torts 2d § 46(1). However, it is not necessary to adopt such a cause of action in order to sustain the verdict of the jury in this case. The *Harned* case recognized the well established rule that mental suffering is compensable in suits for willful torts "which are recognized as torts and actionable independently and separately from mental suffering or other injury." 254 S.W.2d at 85. Damages for mental suffering are recoverable without the necessity for showing actual physical injury in a case of willful battery because the basis of that action is the unpermitted and intentional invasion of the plaintiff's person and not the actual harm done to the plaintiff's body. Restatement of Torts 2d § 18. Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting. Prosser, supra; Wilson v. Orr, 210 Ala. 93, 97 So. 123 (1923). We hold, therefore, that plaintiff was entitled to actual damages for mental suffering due to the willful battery, even in the absence of any physical injury.

■ We now turn to the question of the liability of the corporations for exemplary damages. In this regard, the jury found that Flynn was acting within the course and scope of his employment on the occasion in question; that Flynn acted maliciously and with a wanton disregard of the rights and feelings of plaintiff on the occasion in question. There is no attack upon these jury findings. The jury further found that the defendant Carrousel did not authorize or approve the conduct of Flynn. It is argued that there is no evidence to support this finding. The jury verdict concluded with a finding that $500 would "reasonably compensate plaintiff for the malicious act and wanton disregard of plaintiff's feelings and rights. * * *"

The rule in Texas is that a principal or master is liable for exemplary or punitive damages because of the acts of his agent, but only if:

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the employer or a manager of the employer ratified or approved the act.

■ The above test is set out in the Restatement of Torts § 909 and was adopted in King v. McGuff, 149 Tex. 432, 234 S.W. 2d 403 (1950). At the trial of this case, the following stipulation was made in open court:

"It is further stipulated and agreed to by all parties that as an employee of the Carrousel Motor Hotel the said Robert W. Flynn was manager of the Brass Ring Club."

We think this stipulation brings the case squarely within part (c) of the rule an-

nounced in the *King* case as to Flynn's managerial capacity. It is undisputed that Flynn was acting in the scope of employment at the time of the incident; he was attempting to enforce the Club rules by depriving Fisher of service.

■ The rule of the Restatement of Torts adopted in the *King* case set out above has four separate and disjunctive categories as a basis of liability. They are separated by the word "or." As applicable here, there is liability if (a) the act is authorized, or (d) the act is ratified or approved, *or* (c) the agent was employed in a managerial capacity and was acting in the scope of his employment. Since it was established that the agent was employed in a managerial capacity and was in the scope of his employment, the finding of the jury that the Carrousel did not authorize or approve Flynn's conduct became immaterial.

The *King* case also cited and relied upon Ft. Worth Elevator Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397 (1934). In that case, it was held not to be material that the employer did not authorize or ratify the particular conduct of the employee; and the right to exemplary damages was supported under what is section (b) of the Restatement or *King* rule: The agent was unfit, and the principal was reckless in employing [or retaining] him.

After the jury verdict in this case, counsel for the plaintiff moved that the trial court disregard the answer to issue number eight [no authorization or approval of Flynn's conduct on the occasion in question] and for judgment upon the verdict. The trial court erred in overruling that motion and in entering judgment for the defendants notwithstanding the verdict; and the Court of Civil Appeals erred in affirming that judgment.

The judgments of the courts below are reversed, and judgment is here rendered for the plaintiff for $900 with interest from the date of the trial court's judgment, and for costs of this suit.