COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-12-00221-CV

 

 


 
 
 City
 of Watauga
  
  
 v.
  
  
 Russell
 Gordon
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 17th District Court
  
 of
 Tarrant County (17-252867-11)
  
 November
 21, 2012
  
 Opinion
 by Justice Walker
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

          It
is further ordered that appellant City of Watauga shall pay all of the costs of
this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Sue Walker

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-12-00221-CV

 

 


 
 
 City of Watauga
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Russell Gordon
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 17th
District Court OF Tarrant COUNTY

----------

OPINION

----------

Appellee
Russell Gordon filed suit against Appellant City of Watauga, alleging that he
suffered personal injuries when two City of Watauga Police Officers, while
arresting him and again while transporting him to jail, negligently used tangible
personal property—handcuffs—to pin his hands behind his back too tightly.[1] 
The City filed a plea to the jurisdiction, asserting that it was immune from
suit because the police officers’ conduct fell within the intentional tort
exception to the Texas Tort Claims Act’s (TTCA) waiver of sovereign immunity.  See
Tex. Civ. Prac. & Rem. Code Ann. §
101.057(2) (West 2011) (excluding from TTCA’s limited waiver of immunity claims
arising out of assault, battery, false imprisonment, or any other intentional
tort). The trial court signed an order denying the City’s plea to the
jurisdiction, and the City perfected this interlocutory appeal.  

In a
single issue, the City contends that the trial court erred by denying its plea
to the jurisdiction.  For the reasons set forth below, we will affirm the trial
court’s denial of the City’s plea to the jurisdiction.

The
standard of review of an order granting a plea to the jurisdiction based on
governmental immunity is de novo.  Tex.
Natural Res. Conservation Comm’n v. IT–Davy, 74
S.W.3d 849, 855 (Tex. 2002); Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998), cert.
denied, 526 U.S. 1144 (1999).  It is the plaintiff’s burden to allege facts
that affirmatively establish the trial court’s subject matter jurisdiction.  See Tex. Ass’n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  In
determining whether the plaintiff has met this burden, we look to the
allegations in the plaintiff’s pleadings, accept them as true, and construe
them in favor of the plaintiff.  See
Tex. Dep’t of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 226 (Tex. 2004).  

However,
if a plea to the jurisdiction challenges the existence of jurisdictional facts,
we consider relevant evidence submitted by the parties when necessary to
resolve the jurisdictional issues raised, as the trial court is required to
do.  Id. at 227; Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).  In a case in
which the jurisdictional challenge implicates the merits of the plaintiff’s
cause of action and the plea to the jurisdiction includes evidence, the trial
court reviews the relevant evidence to determine if a fact issue exists.  See
Miranda, 133 S.W.3d at 227.  If the evidence creates a fact question
regarding the jurisdictional issue, then the trial court cannot grant the plea
to the jurisdiction, and the fact issue will be resolved by the factfinder.  Id. 
This standard generally mirrors that of a summary judgment under Texas Rule of
Civil Procedure 166a(c).  Id.
at 228.

Under the doctrine of sovereign immunity, the State is not liable
for the negligence of its employees absent a constitutional or statutory
provision for liability.  Univ. of Tex. Med. Branch v. York, 871 S.W.2d
175, 177 (Tex. 1994).  Statutory provisions authorizing imposition of liability
on the State for the negligence of its employees are set forth in section
101.021(2) of the TTCA; that section expressly waives sovereign immunity for
“personal injury and death so caused by a condition or use of tangible personal
. . . property if the governmental unit would, were it a private person, be
liable to the claimant according to Texas law.”  Tex. Civ. Prac. & Rem.
Code Ann. § 101.021(2)
(West   2011).  Section 101.021(2)’s limited waiver of sovereign immunity does
not apply, however, to claims “arising out of assault, battery, false
imprisonment, or any other intentional tort.”  Id. § 101.057.

Here, the City conceded in its brief and during oral
argument that the police officers’ use of handcuffs constitutes the use of
tangible personal property for purposes of section 101.021(2)’s limited waiver
of immunity.  The City argues, however, that the evidence it submitted in
support of its plea to the jurisdiction established that the handcuffs were not
negligently used but instead were intentionally used.  The City
points to the affidavits of the police officers that the City filed in support
of its plea to the jurisdiction and argues that the officers applied the
handcuffs to Gordon exactly as they intended to do and in accordance with their
training, so that “the actions underlying Plaintiff’s claims are intentional
acts rather than potential acts of negligence.”  The City asserts that the
police officers thus committed intentional torts[2] and that the TTCA’s limited
waiver of immunity does not apply to intentional torts.  See id. 

Premised
on the police officers’ affidavits stating that they had intentionally applied
the handcuffs to Gordon and that the handcuffs were not used “in any manner
other than exactly how [the officers] intended them to be used and applied” and
were applied “[a]s per training,” the City argues that this intent—that the
officers intended their acts as opposed to intended to cause the injuries at
issue—qualifies their conduct in applying the handcuffs as an intentional
tort.  In its brief, the City thoroughly analyzes and attempts to delineate and
distinguish between the case law holding, according to the City, that to
qualify as an intentional tort, the state actor must have only intended his act[3]
and the case law holding that to qualify as an intentional tort, the state
actor must have intended the injury he caused.[4]  The City urges us to
resolve this purported split of authority and argues that only the former intent
is required.

We
need not decide in this case whether a police officer must have intended only his
act or must have intended the injury he caused for a tort that he commits to
fall within section 101.057’s intentional tort exception to section 101.021(2)’s
limited waiver of immunity.  Gordon pleaded facts supporting his claim that the
police officers’ negligent use of tangible personal property caused his
injuries; he did not plead facts that would support an intentional tort. 
Gordon specifically pleaded that, both when he was arrested and when he was
transported from the police station to the jail, he consented to the
application of handcuffs and did not resist their application.  Thus, under
Gordon’s pleadings, the officers’ application of the handcuffs did not involve an
offensive touching or contact of Gordon by the officers as required to constitute
the intentional tort of assault or battery.  See Tex. Penal Code Ann. §
22.01(a)(3) (West 2011) (assault); Fisher v. Carrousel Motor Hotel, Inc.,
424 S.W.2d 627, 629 (Tex. 1967) (battery).  Because Gordon did not plead facts
showing that the police officers committed an assault, battery, false
imprisonment, sexual assault, wrongful death or injury via excessive force, or
other intentional tort, this case is distinguishable from the cases relied upon
by the City.  See Tex. Dep’t of Pub. Safety v. Petta, 44 S.W.3d 575, 580
(Tex. 2001) (holding that plaintiff had pleaded intentional tort by pleading
assault and battery claim against officer so that claims against State
predicated on officer’s conduct fell within intentional tort exclusion from TTCA’s
limited waiver of immunity); City of Fort Worth v. Chattha, No.
02-11-00342-CV, 2012 WL 503223, at *6 (Tex. App.—Fort Worth Feb. 16, 2012, no
pet.) (mem. op.) (holding that plaintiff had pleaded intentional tort of
battery by pleading that officer performed a “take-down” maneuver to force
plaintiff to the ground); City of Waco, 209 S.W.3d at 220–24
(holding that plaintiff’s pleading—that arresting officers utilized excessive
deadly force in decedent’s arrest by repeatedly Tasering decedent as he lay
helpless on the ground—pleaded an intentional tort); Harris Cnty., 177
S.W.3d at 112 (holding that plaintiff’s pleading—that police officer approached
vehicle with gun drawn, “walked directly to the driver’s side door of the
vehicle occupied by the Plaintiff and shot the Plaintiff in the neck”—pleaded
an intentional tort); City of Garland, 146 S.W.3d at 337–38 (holding
that plaintiff’s pleading—that police used excessive and deadly force to arrest
decedent that included the use of pepper spray, handcuffs, a K-9 police service
dog, and other departmentally issued—properly constituted claim for intentional
tort); City of Laredo, 94 S.W.3d at 789 (holding that plaintiff had
pleaded intentional tort of excessive force and assault by pleading that
officer banged her vehicle with his hand, dragged her from the vehicle, threw
her against the side, hit her in the back with his handcuffs, kicked her on the
legs, hit her face against the car, grabbed her breasts, rubbed his private
part against her behind, and reapplied handcuffs to her wrist and leg).

Likewise, the particular police
officers’ affidavits filed by the City in this case—which indicate that they intentionally
applied the handcuffs to Gordon “exactly as they intended to do” and in “accordance
with their training,” do not plead facts indicating that Gordon’s
negligent-use-of-personal-property claim is actually an intentional tort claim. 
Each officer stated in his affidavit, in pertinent part, that Gordon was
handcuffed with his hands behind his back using ASP brand handcuffs and

[a]s per training,
I checked the handcuffs to insure they were double locked . . . and not too
tight.  I check for over tightness by running a finger between the handcuffs
and the suspect’s wrists. . . . The checks for double locking and tightness are
checks which were taught to me in the basic police academy at the beginning of
my law enforcement career and are procedures which I follow every time a
prisoner is handcuffed.

 

. . . . 

 

I applied the handcuffs in the manner described and
conducted the double-lock check and fitness check with my finger
intentionally.  At no time were the handcuffs which were applied to Mr. Gordon
used in any manner other than exactly how I intended them to be used and
applied.  

These
affidavits state no jurisdictional facts establishing an intentional
tort; no facts are stated indicating that the police officers committed
assault, battery, false imprisonment, sexual assault, wrongful death or injury
via excessive force, or other intentional tort.  Accord Tex. Penal Code Ann.
§ 22.01(a)(1), (2), (3) (elements of assault), § 22.011 (West 2011) (elements
of sexual assault); Fisher, 424 S.W.2d at 629–30 (elements of battery); Sears,
Roebuck & Co. v. Castillo, 693 S.W.2d 374, 375–76 (Tex. 1985) (elements
of false imprisonment); City
of Laredo, 94 S.W.3d at 789 (explaining that use of excessive
force to arrest someone is “intentional tortious act”).  Instead, the officers’
affidavits state that they properly applied the handcuffs to Gordon, just as
they intended to, in accordance with their training.  Thus, to the extent the
police officers’ affidavits constituted jurisdictional evidence, that evidence
implicated the merits of Gordon’s claim (whether or not the handcuffs were
properly or negligently applied) and, at the very most, raised a fact issue on whether
the officers negligently applied the handcuffs to Gordon.  See Miranda,
133 S.W.3d at 227.  To hold otherwise would completely eviscerate the limited
waiver of immunity set forth in section 101.021; virtually every time a state
actor allegedly negligently used tangible personal property, section 101.021’s specific,
limited waiver of immunity for this type of conduct could be defeated based
solely on an affidavit by the state actor alleging that he or she in fact intentionally
intended to use the tangible personal property and intentionally intended to
use it in the manner that he or she used it.  Accordingly, because the
jurisdictional evidence presented by the City—consisting of only the two
affidavits by the police officers who handcuffed Gordon—implicated the merits
of Gordon’s negligent-use-of-tangible-personal-property claim and, at most, established
a fact issue on whether the officers negligently applied the handcuffs to
Gordon, the trial court properly denied the City’s plea to the jurisdiction.  See
Miranda, 133 S.W.3d at 277.

We
overrule the City’s sole issue, and we affirm the trial court’s denial of the
City’s plea to the jurisdiction on Gordon’s claim for personal injuries based
on the police officers’ allegedly negligent use of tangible personal property—the
handcuffs.

 

SUE WALKER
JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and GABRIEL, JJ.

 

DELIVERED:  November 21,
2012  








 









[1]The facts pleaded by
Gordon were as follows:  one evening City of Watauga police pulled him over on
suspicion of driving while intoxicated; after Gordon politely refused to
perform field sobriety tests, the officers told him that he would be placed
under arrest and handcuffed; Gordon “consented to the arrest and allowed the
officer to place the cuffs on him without any resistance”; Gordon repeatedly
informed the officer that the handcuffs were too tight and were hurting him, but
the officer did not check the tightness of the handcuffs.  Gordon pleaded that
at the police station, after he had refused to perform any additional sobriety
tests, he was told that he would be handcuffed and taken to jail.  Gordon again
consented, and the placement of handcuffs occurred without incident.  Gordon
told the officers that the handcuffs were too tight and were causing him pain. 
Again, the officers did not check or loosen the handcuffs.  Gordon pleaded a
negligence claim, pleading that the officers acted negligently in their use of
tangible personal property, specifically the use of handcuffs, in one or all of
the following ways:  by failing to properly use the handcuffs as designed; by
failing to follow proper policies and procedures as to the proper use of
handcuffs; and by applying the handcuffs on him in a manner that was too tight
on his wrists.  





[2]For example, the City
argues that 

[e]ven though the Petition purports to plead a
negligence cause of action, the evidence submitted by the Defendant in the
trial court establishes that the acts complained of (placing the handcuffs,
double locking them and checking by running a finger between the handcuffs and
the suspect’s wrist) were purposeful and intentional.  





[3]The City relies on City
of Waco v. Williams, 209 S.W.3d 216 (Tex. App.—Waco 2006, pet. denied); Harris
County v. Cabazos, 177 S.W.3d 105 (Tex. App.—Houston [1st Dist.]
2005, no pet.); City of Garland v. Rivera, 146 S.W.3d 334 (Tex. App.—Dallas
2004, no pet.); and City of Laredo v. Nuno, 94 S.W.3d 786 (Tex. App.—San
Antonio 2002, no pet.).





[4]The City identifies this
line of cases as the Reed Tool line of cases.  See Reed Tool Co. v.
Copelin, 689 S.W.2d 404 (Tex. 1985).